DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Court judgment of conviction and sentence. A jury found Earl W. May, Jr., defendant below and appellant herein, guilty of obstructing official business in violation of R.C. 2921.31(A).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN INSTRUCTING THE JURY THAT THE A [sic] LAW ENFORCEMENT OFFICER HAS A DUTY TO ENTER A RESIDENCE WHICH IS THE SOURCE *Page 2 
OF AN UNEXPLAINED 911 CALL. SUCH INSTRUCTION REMOVED FROM THE JURY'S CONSIDERATION THE ISSUE OF WHETHER THE DEFENDANT WAS PRIVILEGED TO RESIST THE WARRANTLESS ENTRY OF HIS HOME AND DIRECTED A VERDICT ON THE ELEMENT OF "LAWFUL DUTY" CONTAINED IN 2921.31[(A)]. THE INSTRUCTION SUBVERTED THE PRESUMPTION OF INNOCENCE SECURED TO AN ACCUSED PERSON, RELIEVED THE STATE OF ITS BURDEN TO PROVE EACH ELEMENTS [sic] OF THE OFFENSE BEYOND A REASONABLE DOUBT, AND INVADED THE TRUTH FINDING TASK ASSIGNED SOLELY TO THE JURY IN A CRIMINAL CASE, DEPRIVING THE DEFENDANT OF DUE PROCESS OF LAW."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT REFUSED TO GIVE A REQUESTED CHARGE PERTINENT TO THE CASE AND WHICH CORRECTLY STATED THE LAW."
 THIRD ASSIGNMENT OF ERROR:
 "THE DEFENDANT'S CONVICTION FOR THE CRIME OF OBSTRUCTING OFFICIAL BUSINESS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} On the evening of December 7, 2004, the Highland County Sheriff's Office received a 911 telephone call. Deputy Thomas Putnam, the dispatcher on duty that evening, answered the call. The caller, however, abruptly hung-up the telephone. The Department's policy with regard to hang-up calls is to establish contact with the caller to ensure that an emergency doesn't in fact exist. Thus, Deputy Putnam called the number.[1] When no one answered the telephone, Putnam contacted the Greenfield Police Department to dispatch an officer to the residence. *Page 3 
 {¶ 4} Shortly after calling the Greenfield Police Department, Deputy Putnam received a second 911 call from the same residence. Although the second call also resulted in a hang up, the caller stayed on the line long enough for Deputy Putnam to her what he later described as "very soft whispering." Concerned that the caller could be a woman subject to domestic violence, Deputy Putnam again contacted the Greenfield Police Department and asked that an officer do a welfare check of the residence.[2]
 {¶ 5} The Greenfield Police Department dispatched Officer Clinton Sines and police auxiliary member Tomika Rueppel to the residence. When they arrived at the residence, appellant was standing in the doorway behind a screen door and appeared to be very agitated. Appellant asked the police what they wanted and, when Officer Sines informed him that they wished to investigate a 911 call, appellant told them that no one made such a call from that residence. Appellant also pointed to a "no trespassing" sign and asked Officer Sines if he and Rueppel could "fucking read." Officer Sines continued to approach the residence and asked appellant who owned the house. Appellant responded that it belonged to his mother, but that she was at work and that he was alone. Appellant then repeated his demand that they leave the premises.
 {¶ 6} As Officer Sines and Reuppel approached the door, appellant continued to swear at them and twice gestured toward a *Page 4 
baseball bat that he kept near the entrance. Appellant eventually entered the house, slammed the door in their face, locked the door and used the phone. Afraid that appellant might have retrieved a weapon, and also concerned that a domestic violence victim might be inside and need assistance, Officer Sines kicked in the door, entered the home and drew his tasor. Appellant saw the weapon, pleaded with Officer Sines not to "kill" him and promised not to "make anymore problems." No one else was found in the residence. Officer Sines subsequently filed two complaints against appellant including aggravated menacing and obstructing official business.
 {¶ 7} At the jury trial, uncontroverted evidence revealed that two 911 hang-up calls originated from appellant's mother's residence. Furthermore, Officer Sines and Rueppel testified that appellant was agitated when they arrived at the residence, swore at them profusely and threatened violence if they did not leave.
 {¶ 8} The defense argued that Officer Sines was the aggressor and that the 911 hang-up calls resulted from a malfunctioning telephone. Tammy Hawkins, appellant's sister, testified that she was on the phone with appellant when Officer Sines kicked down the door and she claimed that she heard him yell at her brother "[y]ou aint tough now, are you motherfucker[?]" Hawkins further testified that the phone keypads stuck when hit and that, accidentally, she dialed 911 from the residence several days before this incident. Appellant also testified that before *Page 5 
police arrived, he tried to call a friend whose number began with 981. Appellant also stated that he did not intend to dial 911, nor did he recall anyone answering the telephone and announcing that he had reached 911.
 {¶ 9} After hearing the evidence, the jury found appellant not guilty of aggravating menacing and guilty of obstructing official business. The trial court sentenced him to serve forty days house arrest and up to two years of community control sanctions. This appeal followed.
 I {¶ 10} Before we address the specifics of each assignment of error, we pause to review general principles applicable to all three. R.C.2921.31(A) provides that "[n]o person, without privilege to do so . . . shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 11} Appellant's arguments center around the question of whether police had a "lawful duty" to enter his mother's residence and whether he had a "privilege" to resist that entry. Generally speaking, when law enforcement possesses reasonable grounds to believe that an emergency exists, they have a legal duty to enter premises and to investigate. SeeState v. Myers, Marion App. Nos. 9-02-65 9-02-66, 2003-Ohio-2936, at ¶ 9; Lakewood v. Simpson, Cuyahoga App. No. 80383, 2002-Ohio-4086, at ¶ 14. Thus, a 911 call provides sufficient exigent circumstances to excuse Fourth Amendment protections and to allow police to *Page 6 
enter a home without a warrant. State v. Trouten, Jefferson App. No. 04JE18, 2005-Ohio-6592, at ¶¶ 145-146, 149; State v. Martindale, Fairfield App. No. 05-CA-37, 2005-Ohio-6437, at ¶¶ 16-21; State v.Reynolds, Allen App. No. 1-02-70, 2003-Ohio-2067, at ¶ 23.
 {¶ 12} This case is somewhat unusual, however, because two hang-up calls occurred rather than an actual 911 call. Consequently, the central issue is whether exigent circumstances exist under these particular circumstances. We conclude that they do. Our Third District colleagues opined that a 911 hang-up call is "inherently" an emergency.Myers, supra at ¶ 12. Likewise, our Eighth District colleagues held that a 911 hang-up call provides sufficient exigent circumstances to allow police to make a warrantless entry into a home. Simpson, supra at ¶ 15. In State v. Corbett (Mar. 17, 2000), Montgomery App. No. 18015, the court even concluded that officers lawfully entered a premises to investigate a 911 call after the caller re-phoned police to cancel the call.
 {¶ 13} In the case sub judice, the Highland County Sheriff's Department received two 911 hang-up calls from the same address. Deputy Putnam testified that during the final call, he heard soft whispering in the background that increased his concern that a female domestic violence victim may be involved. Also, records revealed that a woman owned the property. In light of these facts, we conclude, as did the trial court, that Officer Sines had a duty to enter the home to inquire whether residents needed *Page 7 
assistance.[3] Also, the exigent circumstances that gave rise to that duty did not vanish simply because appellant informed Officer Sines that he did not need assistance. Logic and public policy dictate that an officer need not always accept the word of a highly agitated individual, who had already threatened the officer with violence, that assistance is not needed. To the contrary, in light of the two 911 hang-up calls, the whispering that Deputy Putnam thought he heard, and the fact that a woman owned the property, Officer Sines properly pursued the investigation.
 {¶ 14} Now, we must determine whether appellant had a "privilege" to resist the entry into the residence for purposes of R.C. 2921.31(A). TheSimpson court, supra at ¶ 15, held that exigent circumstances both justified police entry into a home and removed any constitutional privilege to resist that entry. We agree. Once again, logic requires the conclusion that if police have a duty to enter a home to ascertain if emergency assistance is needed, that duty would be meaningless if someone is privileged to resist that entry.
 {¶ 15} To summarize, we conclude that the two 911 hang-up calls provided sufficient exigent circumstances to create a duty for Officer Sines to investigate whether someone at the residence *Page 8 
needed assistance. Additionally, those exigent circumstances negated any "privilege" on appellant's part to resist that entry and investigation. With these principles in mind, we now turn our attention to the specific assignments of error.
 II {¶ 16} Appellant's first assignment of error involves the following portion of the trial court's jury instruction:
 "Under Ohio law a general rule exists that a law enforcement officer may not enter a private residence without a lawful warrant to serve or arrest. That is the general rule. There are certain exceptions to the general rule under Ohio law. Once [sic] such exception is classified as the exigent circumstance exception. Where an apparent emergency or other exigent circumstance exist which reasonably causes a police officer to believe that a person may be in danger or in need of assistance . . . [a] warrantless entry into a residence is permitted for the limited purpose of assuring the safety and security of the occupants therein. Ohio law recognizes that a 911 call by its very nature can be an emergency call for assistance. If you find from the evidence that Officer Sines had received a dispatched call from the 911 dispatcher indicating one or more telephone calls from that same residence from which such calls were terminated without conclusive communication to the 911 dispatcher, then Officer Sines had a duty to enter upon the residence to inspect and insure [sic] the safety and security of the occupants therein." (Emphasis added.)
Appellant does not contest that two 911 "hang-up" calls were made from the residence. He contends, however, that by instructing the jury that the police had a duty to enter the residence as a result of those calls, the court prohibited the jury from considering the issue of whether he had a "privilege" to resist warrantless entry into his home.
 {¶ 17} As we pointed out above, the 911 hang-up calls created sufficient exigent circumstances to impose a duty on police to *Page 9 
investigate whether someone at the residence needed assistance and further negated any privilege on appellant's part to resist entry into the premises. We find no error in the jury instruction and we hereby overrule appellant's first assignment of error.
 III {¶ 18} Appellant asserts in his second assignment of error that the trial court improperly failed to give his proposed jury instruction:
 "The voluntary opening of a door to one's residence does not constitute voluntary consent to enter over the threshold into the residence. An individual can lawfully refuse to consent to a warrantless entry of their residence. Further, there exists, at least, some limited right to resist entrance to the warrantless entry of the residence such as locking or closing the door or physically placing oneself in the officer's way." (Citations omitted.)
 {¶ 19} To begin, the first sentence appears largely irrelevant to the facts of this case. The prosecution did not argue that appellant voluntary consented entry into the residence and that issue has not been raised. As for the remaining portion of the charge, we conclude that it is an incorrect statement of the law.
Appellant did not have the privilege to resist a warrantless entry due to exigent circumstances. Without any sort of qualification for such circumstances, and in the absence of any mention of the 911 calls, this instruction was overbroad. Thus, we agree with the trial court's conclusion to exclude this jury charge. *Page 10 
 {¶ 20} Consequently, we find no merit in appellant's second assignment of error and it is hereby overruled.
 IV {¶ 21} Appellant asserts in his third assignment of error that his conviction is against the manifest weight of the evidence because the prosecution offered "no credible evidence" to show that he performed an affirmative act to hinder or impede Officer Sines from carrying out his lawful duties. We disagree with appellant.
 {¶ 22} Although appellant couches his argument in terms of "manifest weight," he actually appears to be arguing the sufficiency of the evidence. Of course, a distinction exists between the two concepts. SeeState v. Johnson (2000), 88 Ohio St.3d 95, 112, 723 N.E.2d 1054;State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph two of the syllabus. Under either concept, however, our conclusion would be the same.
 {¶ 23} With regard to the sufficiency of evidence, courts look to the adequacy of evidence. In other words, courts must decide whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after reviewing the evidence and all inferences reasonably drawn therefrom in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Page 11 State v. Hancock, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶ 34; State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300,315.
 {¶ 24} In the case sub judice, Officers Sines and Rueppel both testified that appellant threatened them with physical violence if they did not leave the property. Although the jury acquitted appellant of aggravated menacing, it could have found that such threats were enough to hinder or impede investigation even though the threats may not have caused Sines and Rueppel to believe that appellant would cause them serious physical harm.[4] Moreover, Officer Sines testified that appellant locked the front door and impeded his access into the home. This, too, was an affirmative act.[5] Thus, our review of the record reveals that sufficient evidence exists for the jury to conclude that appellant acted to hinder or to impede the 911 call investigation.
 {¶ 25} We also find nothing in the record to suggest that appellant's conviction is against the manifest weight of the evidence. Appellate courts should not reverse convictions on manifest weight of the evidence grounds unless it is clear that the trier of fact lost its way and created such a manifest *Page 12 
miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457, 473,698 N.E.2d 440; State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814.
 {¶ 26} We believe, after our review of the evidence, that the testimony from Officer Sines and Reuppel support the jury's verdict. We recognize, however, that conflicting evidence was adduced at trial. To the extent that testimony from appellant and his sister contradicted the accounts from the prosecution witnesses, this is a question of weight and credibility and is for the jury to weigh and to decide. SeeState v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v.Frazier (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000. The jury, as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it. See State v. Long (1998),127 Ohio App.3d 328, 335, 713 N.E.2d 1; State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80. The jury is in the best position to view witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations to assess credibility. See Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, appellate courts should not generally second guess a jury's decision on matters of evidentiary weight and witness credibility. See State v.Vance, Athens App. No. 03CA27, 2004-Ohio-5370, at ¶¶ 10; State v.Baker *Page 13 
(Sep. 4, 2001), Washington App. No. 00CA9. For these reasons, we hereby overrule appellant's third assignment of error.
 {¶ 27} Accordingly, based upon the foregoing reasons, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment Opinion
Kline, J.: Concurs in Judgment Opinion as to Assignments of Error II and III; Concurs in Judgment Only as to Assignment of Error I
[1] Deputy Putnam explained that when 911 calls come in, they are routed through a computer that displays the street address from which the call originates.
[2] Deputy Putnam was even more concerned about the potential for domestic violence after he discovered that a woman, Julian Howland (appellant's mother), owned the house.
[3] The question of whether someone has a duty to perform an act is a legal issue for courts to resolve, not a factual issue for a jury to determine. See, generally, Bodnar v. Hawthorne of Aurora Ltd.Ptshp., Portage App. No. 2006-P-2, 2006-Ohio-6874, at ¶ 36; Alarcon v.Rasanow, Lorain App. No. 05CA8833, 2006-Ohio-5804, at ¶ 9; Marock v.Baderton Liedertafel, Summit App. No. 23111, 2006-Ohio-5423, at ¶ 8.
[4] R.C. 2903.21(A) provides that [n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person . . ."
[5] An affirmative act is required to prove a R.C. 2921.31 obstruction of official business violation. See State v. Brickner-Latham, Seneca App. No. 13-05-26, 2006-Ohio-609, at ¶ 26; State v. Grooms, Franklin App. No. 03AP-1244, 2005-Ohio-706, at ¶ 18; State v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25. *Page 1