[Cite as *State v. McIntosh*, 2024-Ohio-2979.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 23CA6 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | |
| | : | DECISION AND |
| ANTHONY McINTOSH, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

_____

APPEARANCES:

Pat Story, Middleport, Ohio, for Appellant.

Andrew J. Noe, Gallipolis City Solicitor, for Appellee.

_____

Smith, P.J.

{¶1} Appellant Anthony McIntosh appeals from the March 9, 2023 judgment of the Gallipolis Municipal Court. McIntosh was convicted at a bench trial of one count of obstructing official business in violation of R.C. 2921.31(A). On appeal, McIntosh contends that the State failed to prove all elements required by the statute, specifically, proof of an affirmative act intended to obstruct the officer. Based upon our review of the record and trial testimony, we agree. Because the prosecution failed to present evidence from which any rational trier of fact could have found beyond a reasonable doubt that McIntosh committed an

affirmative act, we conclude that the trial court erred in convicting him of this misdemeanor crime. Accordingly, McIntosh's sole assignment of error has merit and the judgment of the trial court is reversed.

## FACTS

{¶2} McIntosh's conviction arose from events which occurred on December 2, 2022. On that evening, Sergeant Seth Argabright of the Gallia County Sheriff's Office responded to a call indicating a domestic disturbance at Tyler Mayne's apartment on Sun Valley Road in Gallia County. Upon arrival, officers learned that Mayne was unable to enter his own unit. McIntosh was inside the apartment, along with his girlfriend Brandy Johnson. Ms. Johnson and Tyler Mayne are siblings.

{¶3} Sergeant Argabright knocked, announced, and requested that McIntosh open the door. When the door remained unopened, Mayne gave officers permission to enter. Upon doing so, the officers discovered McIntosh lying on the floor nearby and Brandy Johnson hiding in the laundry room. McIntosh was thereafter taken into custody without disturbance.

{¶4} On December 5, 2022, Sergeant Argabright filed a criminal complaint against McIntosh in the Gallipolis Municipal Court. McIntosh was charged with a violation of R.C.2903.13(A), assault, a misdemeanor of the first degree and R.C.2921.31(A), obstructing official business, a misdemeanor of the second

degree.  Specifically, as to the obstructing charge, the complaint asserted that

McIntosh refused "to permit deputies entrance to the apartment which was under

the control of Tyler R. Mayne."  McIntosh proceeded to a bench trial on March 9,

2023 and was convicted of obstructing official business.[1]

{¶5} McIntosh timely appealed.  The testimony presented at trial is set forth

below.

## ASSIGNMENT OF ERROR

I.   THE TRIAL COURT ERRED BY FAILING TO PROVE
     THAT APPELLANT COMMITTED AN AFFIRMATIVE
     ACT UNDER R.C. 2921.31(A) TO IMPEDE DEPUTIES
     IN PERFORMANCE OF THEIR DUTIES.

{¶6} In his sole assignment of error, McIntosh contends that the evidence

adduced at trial was not sufficient to prove he committed an affirmative act to

obstruct deputies in their investigation of a domestic disturbance at Mayne's

apartment.  McIntosh argues that the State presented absolutely no evidence to

show that he acted with the purpose to affirmatively impede the officers, either in

their attempt to enter the apartment, or after they had entered the apartment.

McIntosh argues that the most the evidence demonstrates is that he did nothing.

---

[1] The trial court granted the defense's Crim.R. 29 motion for acquittal on the assault charge.

## STANDARD OF REVIEW

{¶7} A claim of insufficient evidence is reviewed primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The standard of review is whether, after viewing the probable evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). An appellate court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction; sufficiency does not test the rational persuasiveness of the State's case, but merely its legal adequacy. *State v. Novak*, 4th Dist. Gallia No. 16CA4, 2017-Ohio-455, at ¶ 13; *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17. A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

## LEGAL ANALYSIS

{¶8} The "obstructing" statute, "R.C. 2921.31[,] recognizes that '[c]omplete and honest cooperation with the law enforcement process by all citizens is essential to the effective operation of the justice system.' " *State v. Harris,* 121 N.E.3d 21, 2018-Ohio-4316, at ¶ 13 (4th), quoting *State v. Lazzaro*, 76 Ohio St.3d 261, 667 N.E.2d 384 (1996) (construing R.C. 2921.31(A) and 2921.13(A)(3) ). Obstructing official business under R.C.2921.31(A) has five essential elements: (1) **_an act_** by the defendant; (2) done with purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege. *Novak, supra,* at ¶ 14. (Emphasis added.) " 'The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties.' " *State v. Henry,* 2018 Ohio-1128, 110 N.E.3d 103, at ¶ 55 (8th Dist.), quoting *State v. Wellman,* 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12 (1st Dist.)

{¶9} However, R.C. 2921.31 "criminalize[s] only affirmative acts, not the failure to act." *State v. Certain,* 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259, ¶ 12 (4th Dist.) (Obstruction found where defendant fled after request to stop.) "[A] defendant must engage in some affirmative or overt act or undertaking

that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate * * *." *State v. Prestel,* 2nd Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. This court has previously acknowledged that "a person cannot be guilty of obstructing official business by doing nothing or failing to act." *State v. Newsome*, 4th District Hocking No. 17CA2, 2017-Ohio-7488, ¶ 8 (Obstruction found where defendant actively evaded officer.) In *Newsome,* we observed:

> Ohio courts have interpreted this statute to criminalize only affirmative acts, not the failure to act." *State v. Certain,* 2009-Ohio-148, 905 N.E.2d 1259, ¶ 12 (4th Dist.); citing *State v. May,* 4th Dist. Highland No. 06CA10, 2007-Ohio-1428, fn. 5 ("An affirmative act is required to prove a R.C. 2921.31 obstruction of official business violation."); *State v. Wellman,* 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 10 ("A violation of this statute requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act."); *State v. Prestel,* 2nd Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16 ("Ohio courts have consistently held that in order to violate the obstructing official business statute, a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information."); *State v. Grooms,* 10th Dist. Franklin No. 03AP-1244, 2005-Ohio-706, ¶ 18 ("R.C. 2921.31(A) requires proof of an affirmative act that hampered or impeded performance of the lawful duties of a public official.").

{¶10} At issue here is whether McIntosh's failure to open the door for officers constitutes an affirmative act of obstruction in order to convict him under R.C. 2921.31(A). Because the term "act" is not defined in R.C. 2921.31, we must

turn to its common and ordinary meaning, which may be derived from a dictionary.[2] McIntosh argues that his lack of action is not sufficient to prove the crime of obstruction of official business.

{¶11} Sergeant Argabright testified that on December 2, 2022, he learned that deputies had already responded to Tyler Mayne's residence on anonymous calls that McIntosh had physically assaulted Brandy Johnson. When Sergeant Argabright arrived, he made contact with Tyler Mayne who had previously attempted to allow law enforcement officers into his apartment. Mayne gave Argabright permission to enter the residence. Both men were concerned about Brandy Johnson's physical safety. Argabright knocked and announced his presence twice, addressed McIntosh by name, and requested the door be opened.

{¶12} After waiting approximately 30 seconds after the second request, Argabright used force to enter. Upon entering, Argabright immediately saw McIntosh located in a common room of the apartment, to the right of the door, "lying on the floor or couch maybe." Argabright did not see anyone else in the room. Argabright estimated that McIntosh was located three to five feet from the door breached by the officers. Brandy Johnson was eventually found hiding in the

---

[2] *See also State v. Erskine*, 2015-Ohio-710, 29 N.E.3d 272, ¶ 28. An act is defined as "1, a: the doing of a thing: DEED an act of courage; b: law: something done voluntarily." (Emphasis added.) https://www.merriam-webster.com/dictionary/act.

laundry room, curled up inside the dryer. The laundry room was 10 to 15 feet from the door.

{¶13} Argabright testified Johnson was quiet and appeared to have a minor injury on her face. McIntosh claimed he was asleep and "wondered why we were there and why we had entered the residence." The other officers secured McIntosh. On cross-examination, Sergeant Argabright testified there was no response when he knocked and announced. He further testified that nothing prevented him from entering the locked door other than "the individuals inside not unlocking the door for us." Argabright admitted McIntosh did not resist being taken into custody and was cooperative with the officers.

{¶14} Deputy Brendan Payne's testimony largely mirrored Sergeant Argabright's. Deputy Payne further offered that upon entering the apartment, McIntosh "acted confused as if he was unaware of our presence as well as unsure why we was entering Mr. Mayne's residence." The only difference is that Deputy Payne estimated that McIntosh was located five to eight feet from the door. On cross-examination, Deputy Payne described McIntosh's position upon their entrance, as "head laying on his arm, kind of faced to the side."

{¶15} Tyler Mayne testified McIntosh was a "friend, acquaintance." Mayne had spoken with his sister Brandy earlier in the day and she sounded upset. Mayne testified he first encountered Brandy at McIntosh's apartment next door to

Mayne's.  Mayne invited the pair to his apartment.  Brandy was visibly shaken.

Mayne testified McIntosh was "not abnormal," just walking around the apartment.

{¶16} Mayne testified he left to meet a friend.  McIntosh was awake when

he left.  Mayne could not recall whether or not he locked his apartment.  Mayne

testified when he went back to his apartment, law enforcement was there.  Mayne

attempted to open the door with his keys.  He was unable to get inside so he

permitted the officers to try.

{¶17} The State directs us to a couple of cases which are easily

distinguishable.  In *State v. Henry*, 2018-Ohio-1128, 110 N.E.3d 103, ¶ 58 (10th

Dist.), the accused "refused the officer's request to leave, pushed the officer, and

resisted the officer's attempt to remove him from the [BMV] agency."  Those facts

are in stark contrast with the facts here where the record is devoid of any finding of

physical contact with officers or resisting arrest on the part of McIntosh.  In *State v.*

*Gardner*, 2017-Ohio-7241, 96 N.E.3d 925 (8th Dist.), the State presented evidence

that Gardner knew the police arrived with the intent to arrest him.  The evidence

also showed that Gardner displayed physical and verbal hostility towards officers

with a "verbal challenge" and "aggressive stance."  No evidence in this record

even suggests that McIntosh showed hostile or aggressive verbal or physical conduct toward officers.[3]

{¶18} McIntosh directs us to *Columbus v. Michel*, 55 Ohio App.2d 46, 378 N.E.2d 1077 (10th Dist.1978). There, the defendant was charged with obstructing official business under a Columbus City Code section which contained the same language as R.C. 2921.31. The charge was based on the defendant's refusal to open the door to his own home upon the request of a police officer. Officers knocked and announced and acknowledged that they heard someone moving around inside. The defendant stated that he did not answer the door because he did not want to get in trouble with the police. The court found that the defendant did not obstruct official business because the defendant committed no act that impeded law enforcement by not opening the door, but it was the defendant's ***omission*** that did so. Similarly, we view McIntosh's failure to open the door as only an omission, not an affirmative act.

---

[3]This court and others have found that the following conduct constitutes an affirmative act under the obstruction statute: (1) "taunting" officers in a "loud and boisterous manner" and pulling away during an arrest, *State v. Greene,* 9th Dist. Lorain No. 08CA009465, 2009-Ohio-2518, ¶ 15; (2) "snatching" a driver's license from an officer attempting to write an open container ticket, *State v. Lester,* 12th Dist. Butler No. CA2003-09-244, 2004-Ohio-2909, ¶ 49; (3) physically interfering with an officer's attempt to issue citations for open container violations, *State v. Daily,* 4th Dist. Athens No. 97CA25, 1998 WL 18139, *1 (Jan. 15, 1998); (4) making a false statement, *State v. Novak,* 4th Dist. Gallia No. 16CA4, 2017-Ohio-455; (5) preventing officers from closing a police cruiser door, *State v. Dunn,* 4th Dist. Pickaway No. 06CA6, 2006-Ohio-6550, ¶ 47; (6) refusing officer's instruction to put down knife while pointing it at officer, *State v. Neptune,* 4th Dist. Athens No. 99CA25, 2000 WL 502830 (Apr. 21, 2000); (7) "repeatedly yelling insults at the officers, purposefully distracting them from an arrest, and brandishing the pepper spray," *State v. Bryant,* 9th Dist. Summit No. 17547, 1996 WL 490246 (Aug. 28, 1996), *6; and (8) acting in "an antagonistic" manner, *State v. Shoe,* 3rd Dist. Shelby No. 17-17-22, 2018-Ohio-3006, ¶ 21.

{¶19} While we agree with the trial court's obvious determination on the credibility of officers' testimony, we must respectfully disagree with the court's conclusion that construes their testimony about McIntosh's inaction or omission as an affirmative act. The State presented no testimony suggesting McIntosh barricaded or blocked the door. No evidence indicates McIntosh locked the door, as Mayne could not recall whether or not he may have done so. Brandy Johnson was also in the apartment the entire time. Neither she nor McIntosh responded to the officers' requests. And there is an absence of any timeline as to when these events occurred throughout December 2, 2022. There is simply no evidence that McIntosh engaged in "the doing of a thing" to impede officers from entering Mayne's apartment.

{¶20} After viewing the evidence most favorably to the State, we find that the State failed to present evidence of an affirmative act by McIntosh, as needed to prove beyond a reasonable doubt that he violated R.C. 2921.31(A). Accordingly, we find merit to McIntosh's sole assignment of error and it is hereby sustained. The judgment of the trial court is reversed.

**JUDGMENT REVERSED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**