The STATE of Ohio, Appellee,

v.

BARCUS, Appellant.

The STATE of Ohio, Appellee,

v.

WHEATLEY, Appellant.

[Cite as *State v. Barcus* (1999), 133 Ohio App.3d 409.]

Court of Appeals of Ohio,
Fourth District, Athens County.

Nos. 98CA34 and 98CA35.

Decided April 27, 1999.

*William R. Biddlestone,* Athens County Prosecuting Attorney, and *Michael A. Prisley,* Assistant Prosecuting Attorney, for appellee.

*Eslocker, Hodson & Oremus Co., L.P.A.,* and *Thomas S. Hodson,* for appellants.

Harsha, Judge.

Appellants Bryan Barcus and James Wheatley appeal their convictions for possession of a dangerous drug for sale at retail, in violation of R.C. 4729.51(C)(2). The appellants consolidated their appeals and raise four assignments of error:

## Assignment of Error I

"The trial court erred by not dismissing charges of possession of a dangerous drug for sale, an alleged violation of Ohio Revised Code Section 4729.51(C)(2) because the state failed to prove the contents of the canisters in question."

## Assignment of Error II

"The trial court erred by not dismissing charges of possession of a dangerous drug for sale, an alleged violation of Ohio Revised Code Section 4729.51(C)(2), because the court must find that a specific statute takes precedence over a general one."

## Assignment of Error III

"Since there was no evidence of sale of nitrous oxide, the state could not prove, as a matter of law, that the contents of the canister were a dangerous drug possessed for sale at retail and the trial court erred in finding the same."

## Assignment of Error IV

"If at all, the defendant[s] should have been sentenced under Ohio Revised Code Section 2925.31, a misdemeanor, not a felony of the fifth degree, and the court erred in not doing so."

Finding none of the assignments of error meritorious, we affirm the trial court's judgment.

## I

During the "Gradfest" celebration in June 1997, Athens County Deputy Sheriff David Warren observed a steady stream of people purchasing balloons from the back of a Jeep Cherokee. Earlier that day, agents from the Southeast Counties of Ohio (SECO) Narcotics Task Force had informed the Athens County Sheriff's Department that several people at Gradfest were selling balloons inflated with nitrous oxide.

Deputy Warren and Lieutenant Jay Barrett approached the Jeep and purchased a balloon with a marked five dollar bill. Deputy Warren observed appellant Wheatley fill a balloon from a tank and appellant Barcus attempting to warm a second tank that had frozen. The two tanks were blue, approximately four feet tall and fifteen inches in diameter, matching the typical characteristics of nitrous oxide containers. One of the tanks had a warning label attached to it. The officers believed that the tanks contained nitrous oxide. Based on their purchase and their observations, the officers arrested the appellants.

A grand jury indicted the appellants for one count each of possession of dangerous drugs for sale at retail, in violation of R.C. 4729.51(C)(2), and two counts each of sale of a dangerous drug at retail, in violation of R.C. 4729.51(C)(1). The appellants pled not guilty and moved to dismiss the indictments on the grounds that they did not possess or sell a "dangerous drug" within the meaning of R.C. 4729.51(C). The appellants also argued that the indictments were invalid because the state should have charged them with violating R.C. 2925.32, a specific statute covering "harmful intoxicants" including nitrous oxide.

The trial court dismissed each of the counts alleging sale of a dangerous drug at retail under R.C. 4729.51(C)(1). The court concluded that nitrous oxide was both a "harmful intoxicant" and a "dangerous drug" within the statutory meaning of those terms. However, the trial court found that R.C. 2925.32(B) was a specific statute governing the dispensation of nitrous oxide and, therefore, controlled over the general statute governing sale of dangerous drugs. The trial court reached a different result concerning the possession offenses. The court found that R.C. 2925.32(B), a statute prohibiting dispensing of nitrous oxide, did not conflict with R.C. 4729.51(C)(2), which prohibits possession of dangerous drugs for retail sale. Thus, the trial court allowed the possession counts to stand.

Following the trial court's rulings on the motions to dismiss, the appellants requested hearings to change their pleas. The appellants entered pleas of no contest to possession of dangerous drugs for sale at retail. The trial court accepted the pleas and convicted the appellants for violating R.C. 4729.51(C)(2). The appellants commenced this appeal.

## II

In their first assignment of error, the appellants contend that the trial court erred in denying their motion to dismiss the indictments in their entirety. Although the court dismissed the counts charging the sale of nitrous oxide, the appellants contend that the court should have also dismissed the possession charges. The appellants present a two-pronged argument in support of this contention. First, they argue that the state presented insufficient evidence at the motion hearing to show that the tanks seized by the officers actually contained nitrous oxide. Although the state presented testimony from Robert Amiet, a compliance specialist from the Ohio State Board of Pharmacy, that nitrous oxide is a dangerous drug, the appellants note that Amiet never inspected the tanks involved in this case to determine if they contained nitrous oxide. Second, the appellants argue that the possession counts in the indictment are defective as a matter of law because nitrous oxide is not a dangerous drug within the meaning of R.C. 4729.51(C)(2). We review both arguments *de novo* and find that neither one has merit.

The indictments alleged that the appellants "did commit the crime of Possession of Dangerous Drugs for Sale by, possessing for sale, at retail, a dangerous drug, to wit: Nitrous Oxide, contrary to and in violation of Section 4729.51(C)(2) of the Ohio Revised Code * * * ." The appellants initially argue that the state failed to meet some "minimum standard of proof" that the tanks in question contained nitrous oxide. This argument, however, is an improper basis upon which to dismiss an indictment. "[A] motion to dismiss charges in an indictment tests the [legal] sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant." *State v. Patterson* (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165, 1167. Thus, when a defendant moves to dismiss, the proper determination is whether the allegations contained in the indictment constitute offenses under Ohio criminal law. *Id.* If they do, "it is premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges." *Id.*; see, also, *State v. Miller* (Dec. 4, 1998), Montgomery App. No. 17273, unreported, 1998 WL 833796 (on a motion to dismiss an indictment, court looks to the indictment and does not examine the sufficiency of the state's evidence). In this case, the counts alleging possession of a dangerous drug for sale at retail properly charge an offense under Ohio law. The issue of whether the tanks in question actually contained nitrous oxide goes beyond the face of the indictment. Such an attempt to test the weight or sufficiency of evidence is inappropriate at the pretrial stage. *State v. O'Neal* (1996), 114 Ohio App.3d 335, 336, 683 N.E.2d 105, 105–106; *State v. Varner* (1991), 81 Ohio App.3d 85, 86, 610 N.E.2d 476, 477; *State v. McNamee* (1984), 17 Ohio App.3d 175, 176, 17 OBR 306, 307–308, 478 N.E.2d 843, 844–845; see, also, Crim.R. 12(B) (allowing only pretrial motions capable of determination *without* the trial of the general issue).

The appellants' second argument under this assignment of error does test the legal sufficiency of the indictment. Even assuming that the tanks in question contained nitrous oxide, the appellants contend that the possession counts should be dismissed because, as a matter of law, nitrous oxide is not a dangerous drug within the meaning of R.C. 4729.51(C)(2). The appellants contend that nitrous oxide is correctly classified as a harmful intoxicant and not a dangerous drug. The appellants emphasize that the state's chemical analysis concluded that the tanks contained harmful intoxicants and that R.C. 2925.32 specifically covers harmful intoxicants, including nitrous oxide.

The appellants correctly note that nitrous oxide is a "harmful intoxicant" within the statutory meaning of that term. See, generally, R.C. 2925.01(I) and R.C. 2925.32(B). In denying the motions to dismiss the possession counts, the trial court found that nitrous oxide is properly classified as either a "harmful intoxicant" or a "dangerous drug," rendering the indictments valid. We agree

with the trial court. The fact that nitrous oxide is a "harmful intoxicant" does not foreclose it from being a "dangerous drug" within the statutory definitions of those terms. A substance may belong to more than one category. See *State v. Frankovich* (Mar. 31, 1997), Athens App. No. 96CA1775, unreported, 1997 WL 151471 (acknowledging that a drug may qualify as both a harmful intoxicant and a dangerous drug); see, also, *State v. Haughn* (Aug. 15, 1995), Champaign C.P. No. 95CR19, unreported. Thus, the pertinent question becomes whether nitrous oxide qualifies as a "dangerous drug" within the meaning of R.C. 4729.51(C)(2).

At the time of the appellants' offense, R.C. 4729.02(D)(1)[1] defined "dangerous drug" for the purposes of R.C. 4729.51(C)(2). The statute defined the term as:

"(1) Any drug to which either of the following applies:

"(a) Under the 'Federal Food, Drug, and Cosmetic Act' [Section 301 *et seq.,* Title 21, U.S.Code] is required to bear a label containing the legend 'Caution: Federal law prohibits dispensing without prescription' or 'Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian' or any similar restrictive statement, or may be dispensed only upon prescription;

"(b) Under Chapter 3715. or 3719. of the Revised Code may be dispensed only upon a prescription."

Thus, any drug that requires a prescription under the Federal Food, Drug, and Cosmetic Act qualifies as a dangerous drug under Chapter 4729 of the Revised Code. Consequently, if the canisters seized from the appellants in this case contained a prescription drug, then the appellants may be convicted under R.C. 4729.51(C)(2) by possessing them for retail sale. See *Frankovich, supra.*

Section 353(b)(1), Title 21, U.S.Code states:

"A drug intended for use by man which—

"(A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug;

"* * *

"shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist; or (iii) by refilling any such written or oral prescription if such refilling is authorized

---

1. Effective July 22, 1998, the legislature amended former R.C. 4729.02 and recodified it at R.C. 4729.01. The definition of "dangerous drug" is now contained in R.C. 4729.01(F). The definition of "dangerous drug" codified at R.C. 4729.01(F)(1) is substantially similar to the one used in former R.C. 4729.02(D)(1).

by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale."

Because of its potentially harmful effects, nitrous oxide is a drug that can be dispensed only by prescription in certain concentrations. See *Frankovich, supra; State v. Rizzo* (July 7, 1995), Montgomery C.P. No. 94CR3368, unreported. Thus, nitrous oxide qualifies as a prescription drug under the Federal Food, Drug, and Cosmetic Act and therefore fits within the definition of a "dangerous drug" set forth in Chapter 4729 of the Revised Code. We recognize that a given case could present factual questions regarding the amount of nitrous oxide and whether a given concentration of the gas makes it a "prescription drug" (and therefore a dangerous drug). However, because nitrous oxide is a dangerous drug in certain concentrations, the indictments in this case were facially valid by alleging possession of nitrous oxide for sale at retail.

Further, any drug that is required to bear a label under the Federal Food, Drug, and Cosmetic Act is also a "dangerous drug" within the meaning of Chapter 4729 of the Revised Code. Nitrous oxide fits this definition. Federal regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act require a warning statement for nitrous oxide (and other gases intended for drug use) that reads:

" 'Warning—Administration of (name of gas) may be hazardous or contraindicated. For use only by or under the supervision of a licensed practitioner who is experienced in the use and administration of (name of gas) and is familiar with the indications, effects, dosages, methods, and frequency and duration of administration, and with the hazards, contraindications, and side effects and the precautions to be taken * * *.' " Section 201.161(a), Title 21, C.F.R.

We conclude that the language contained in the federal regulation is a type of restrictive statement contemplated by R.C. 4729.02(D)(1)'s definition of "dangerous drug." Thus, it appears that nitrous oxide qualifies as a dangerous drug within the meaning of R.C. 4729.51(C)(2). This conclusion is further bolstered by provisions of the Ohio Administrative Code. Chapter 119 of the Revised Code allows the Ohio State Board of Pharmacy to promulgate administrative rules relating to Chapter 4729 of the Revised Code. See *Frankovich, supra.* Ohio Adm.Code 4729–25–01 requires a person to obtain a "limited * * * distributor of dangerous drugs license from the board of pharmacy" before the person may even purchase or possess nitrous oxide for uses related to food ingredients. The Administrative Code thus appears to presuppose nitrous oxide as falling within the "dangerous drug" definition in R.C. 4729.02(D)(1).

Inasmuch as the indictments allege that the appellants possessed for sale at retail "a dangerous drug, to wit: Nitrous Oxide," they are facially valid. The indictments charge an offense under Ohio criminal law and specify a gas that falls within the definition of "dangerous drug." The appellants' first assignment of error is overruled.

## III

■ The second and fourth assignments of error raise related issues pertaining to statutory construction that require plenary review. The appellants contend that the trial court impermissibly convicted them under R.C. 4729.51(C)(2), a general statute governing dangerous drugs, when R.C. 2925.32(B), a specific statute governing nitrous oxide as a harmful intoxicant, also applied to their conduct. The appellants argue that R.C. 2925.32(B) classifies offenses related to nitrous oxide as misdemeanors while a conviction under R.C. 4729.51(C)(2) is a fifth-degree felony. Thus, they argue that the two statutes conflict, requiring application of the more specific statute and less severe penalty. The appellants rely on R.C. 1.51, which states:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

■ In this case, the statutes at issue deal respectively with possession of a dangerous drug for retail sale and the improper dispensing of nitrous oxide. In determining whether R.C. 1.51 applies, we must first ascertain whether the statutes are in irreconcilable conflict. See *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596, 597. A conflict exists only when the *same* conduct is punishable by different penalties contained in different statutes. *Id.;* see, also, *State v. Volpe* (1988), 38 Ohio St.3d 191, 193, 527 N.E.2d 818, 820–821.

■ The trial court convicted the appellants of violating R.C. 4729.51(C)(2), which states that "[e]xcept as provided in division (C)(4) of this section, no person shall possess for sale, at retail, dangerous drugs." [2] The elements of this offense thus consist of a defendant possessing a dangerous drug in the context of a retail sale. See R.C. 4729.01(J) (defining "sell") and R.C. 4729.01(L) (defining "retail sale"). To be convicted, a person need not dispense a dangerous drug and need not actually complete the transaction. The mere act of possessing a dangerous

---

2. The appellants do not contend that any of the exceptions contained in R.C. 4729.51(C)(4) apply to this case.

drug for retail sale, absent any statutory exception, constitutes a completed offense under R.C. 4729.51(C)(2). Violation of R.C. 4729.51(C)(2) is punishable as a fifth-degree felony. R.C. 4729.99(E)(1).

R.C. 2925.32(B) deals with the improper dispensing or distributing of nitrous oxide. The statute states:

"(B)(1) No person shall knowingly dispense or distribute nitrous oxide to a person age twenty-one or older if the person who dispenses or distributes it knows or has reason to believe the nitrous oxide will be used in violation of section 2925.31 of the Revised Code.

"(2) Except for lawful medical, dental, or clinical purposes, no person shall knowingly dispense or distribute nitrous oxide to a person under age twenty-one.

"(3) No person, at the time a cartridge of nitrous oxide is sold to another person, shall sell a device that allows the purchaser to inhale nitrous oxide from cartridges or to hold nitrous oxide released from cartridges for purposes of inhalation. The sale of any such device constitutes a rebuttable presumption that the person knew or had reason to know that the purchaser intended to abuse the nitrous oxide."

Under R.C. 2925.32(B)(1) through (3), a criminal offense requires a complete act of dispensing or distributing nitrous oxide. Mere possession of nitrous oxide is not enough under this statute. Violation of R.C. 2925.32(B)(1) through (3) is a fifth-degree felony. See R.C. 2925.32(D)(1). The current version of R.C. 2925.32, which took effect on January 1, 1997, specifically added subdivision (B)'s provisions dealing with nitrous oxide.

As we concluded in our analysis of the first assignment of error, nitrous oxide is a dangerous drug within the meaning of Chapter 4729 of the Revised Code. Thus, nitrous oxide is theoretically subject to the provisions of both R.C. 4729.51(C) and R.C. 2925.32(B). The appellants insist that R.C. 2925.32(B) must control because it is a specific statute concerning nitrous oxide as a harmful intoxicant, enacted later in time, providing only misdemeanor penalties. Thus, the appellants insist that R.C. 4729.51(C)(2) and R.C. 2925.32 are in irreconcilable conflict. We disagree.

Statutes are in irreconcilable conflict only when they provide *different* penalties for the same conduct. *Sufronko, supra,* 105 Ohio App.3d at 506, 664 N.E.2d at 597. The appellants assert that R.C. 4729.51(C)(2) punishes possession of a dangerous drug for retail sale as a fifth-degree felony while R.C. 2925.32 punishes distribution of a harmful intoxicant as a misdemeanor. Assuming, without deciding, that R.C. 2925.32(B) and R.C. 4729.51(C)(2) punish the same conduct, the appellants are incorrect.[3] Contrary to the appellants' assertions,

---

3. Although we decline to decide the question, we note that in comparing the elements of R.C. 4729.51(C)(2) and R.C. 2925.32(B)(1), it appears evident that the statutes are not aimed at the

violations of R.C. 2925.32(B)(1) through (3) do *not* impose a lesser penalty than a violation of R.C. 4729.51(C)(2). An act of dispensing nitrous oxide in violation of R.C. 2925.32(B)(1) through (3) results in a fifth-degree felony, the same classification as an unauthorized possession of a dangerous drug for retail sale under R.C. 4729.51(C)(2). See R.C. 2925.32(D)(1). In arguing that violations specifically relating to nitrous oxide are misdemeanors, the appellants incorrectly rely upon R.C. 2925.32(D)(2). Under this provision, the failure to comply with record-keeping and labeling requirements pertaining to nitrous oxide *cartridges*, normally used for purposes of food preparation, are fourth-degree misdemeanors. See, also, R.C. 2925.32(B)(4). The misdemeanor provisions of R.C. 2925.32(D)(2) are inapplicable to the conduct charged in this case. Thus, the statutes at issue contain the *same* penalties for the proscribed conduct and are therefore reconcilable.

We overrule the appellants' second and fourth assignments of error.[4]

## IV

In their third assignment of error, the appellants argue that the state could not prove, as a matter of law, that they possessed nitrous oxide for sale at retail. The appellants cite a lack of proof during the pretrial hearing that the balloons purchased by the undercover officers contained nitrous oxide. Therefore, the appellants argue that the state lacked evidence of a retail sale of the gas. Without proof of a sale, the appellants argue that they cannot be convicted of

---

same conduct. R.C. 4729.51(C)(2) prohibits the mere possession of a dangerous drug (*e.g.*, nitrous oxide) for sale at retail. R.C. 2925.32(B)(1) through (3), however, require a complete act of dispensing or distributing nitrous oxide. An act of possession under R.C. 4729.51(C)(2) does not necessarily violate the nitrous oxide proscriptions contained in R.C. 2925.32(B). When statutes provide separate and distinct offenses, R.C. 1.51 is inapplicable because the statutes are reconcilable. *State v. Chippendale* (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134, 1136; *State v. Cooper* (1990), 66 Ohio App.3d 551, 553, 585 N.E.2d 868, 869–870.

4. We note that the appellants do not raise the applicability of R.C. 2925.31(A), which prohibits the possession of harmful intoxicants. Although the appellants' fourth assignment of error states that the misdemeanor provisions under R.C. 2925.31 should govern their conduct, the appellants' brief argues *only* that R.C. 2925.32 was the applicable statute with respect to their conduct and sentencing. This court need not decide issues that are not specifically raised and briefed. See *Toledo's Shoppers City v. Steak House* (1986), 24 Ohio St.3d 198, 202, 24 OBR 426, 429–430, 494 N.E.2d 1101, 1104–1105. Even if the appellants had argued the applicability of this statute, we note that it would not have prevented their conviction under R.C. 4729.51(C)(2). R.C. 2925.31(A) does not prohibit the same conduct as R.C. 4729.51(C)(2). A person violates R.C. 2925.31(A) by mere possession of a harmful intoxicant (such as nitrous oxide). However, R.C. 4729.51(C)(2) requires the additional elements of having a dangerous drug (such as nitrous oxide) *for sale at retail*. Thus, the statutes do not punish the same conduct, meaning that R.C. 2925.31(A) is not a specific provision that controls over the general provision contained at R.C. 4729.51(C)(2). See *Chippendale, supra*, 52 Ohio St.3d at 120, 556 N.E.2d at 1136.

possessing the gas for retail sale. We review this argument *de novo* and find it to be meritless.

The appellants entered pleas of no contest to the charge of possessing a dangerous drug for sale at retail. A no contest plea admits the facts alleged in the indictment. Crim.R. 11(B)(2). The indictment in this case alleged that the appellants possessed "for sale, at retail, a dangerous drug, to wit: Nitrous Oxide * * *." By pleading no contest, the appellants admitted that they possessed the nitrous oxide for retail sale. The appellants' plea relieved the state of its burden of proof concerning the balloons and their contents. We overrule the third assignment of error.

Finding none of the appellants' assignments of error meritorious, we affirm the trial court's judgments.

*Judgments affirmed.*

KLINE, P.J., and PETER B. ABELE, J., concur.