### The STATE of Ohio, Appellant,

### v.

### CERTAIN, Appellee.

[Cite as *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 07CA3003.

Decided Jan. 8, 2009.

458

Toni L. Eddy, City of Chillicothe Law Director, and Mark A. Preston, Assistant Law Director, for appellant.

Timothy Young, Ohio Public Defender, and Jessica S. McDonald, Assistant Ohio Public Defender, for appellee.

HARSHA, Judge.

{¶ 1} The state charged Lucas J. Certain with obstructing official business in violation of R.C. 2921.31 after he fled from a police officer attempting to make an investigative stop. Relying on our decision in *State v. Gillenwater* (Apr. 2, 1998), Highland App. No. 97CA0935, 1998 WL 150354, the trial court dismissed the criminal complaint against Certain, concluding that "mere flight from a request for a *Terry* stop does not constitute a violation of obstructing official business." (See also *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.) Because the decision in *Gillenwater* is not viable, we overrule it and hold that flight may, in appropriate circumstances, constitute a violation of R.C. 2921.31. And we conclude that the circumstances here are appropriate to allow the state to charge Certain with "obstruction."[1]

---

1. Obviously, the trial court was unable to anticipate our new interpretation of the statute and acted appropriately in applying *Gillenwater*.

## I.   Facts

{¶ 2} The state charged Certain with obstructing official business in violation of R.C. 2921.31 after he fled from a sheriff's deputy who was attempting to make an investigative stop.   R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."   Certain moved to dismiss the complaint, relying on our holding in *Gillenwater*, Highland App. No. 97CA0935, 1998 WL 150354, that "mere flight from a request for a *Terry* stop" does not constitute a violation of R.C. 2921.31.   At the hearing, the parties stipulated to the following facts:

1.   Defendant was charged with obstructing official business by Deputy Gannon of the Ross County Sheriff's Department on June 3, 2007.

2.   Deputy Gannon responded to 16465 Charleston Pike in reference to a fight complaint.   Officers were advised that the suspects had run into an adjacent field.

3.   Defendant was located in a concealed location at the scene and was instructed to approach Deputy Gannon.

4.   Defendant ran on foot and failed to stop after being so advised and left the area.   He was later identified by Officer Gannon through photographs.

Concluding that *Gillenwater* controlled this case, the trial court dismissed the complaint, finding that "mere flight from a request for a *Terry* stop does not constitute a violation of obstructing official business."

{¶ 3} The state now brings this appeal, presenting a single assignment of error: "The trial court erred in dismissing the State's complaint alleging a violation of R.C. 2921.31 on the basis that mere flight from a Terry stop does not constitute Obstructing Official Business."

## II.   "Summary Judgment" in a Criminal Case

{¶ 4} As a general rule, the Ohio Rules of Criminal Procedure do not allow for summary judgment on an indictment prior to trial.   *State v. Holder*, Cuyahoga App. No. 89709, 2008-Ohio-1271, 2008 WL 740517, at ¶ 5; *State v. Turic*, Montgomery App. Nos. 21453 and 21454, 2006-Ohio-6664, 2006 WL 3692417, at ¶ 11.   Instead, a pretrial motion to dismiss can only raise matters that are "capable of determination without a trial of the general issue."   Crim.R. 12(C); *State v. Nihiser*, Hocking App. No. 03CA21, 2004-Ohio-4067, 2004 WL 1737862, at ¶ 10.   " '[A] motion to dismiss charges in an indictment tests the [legal] sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.' "   *State v.*

*Barcus* (1999), 133 Ohio App.3d 409, 414, 728 N.E.2d 420, quoting *State v. Patterson* (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165. Thus, "when a defendant moves to dismiss, the proper determination is whether the allegations contained in the indictment constitute offenses under Ohio criminal law." Id. If they do, it is premature for the trial court to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges. *Nihiser* at ¶ 9.

{¶ 5} Certain's motion to dismiss did not challenge the sufficiency of the allegations in the complaint, which were stated in the language of the statute. Instead, Certain argued that under the facts of the case, none of his actions were criminal. Thus, Certain's motion required the trial court to look beyond the face of the complaint to the evidence and testimony that would be offered at trial— here, the stipulations of fact agreed to by the parties. Normally, when a motion to dismiss requires examination of evidence beyond the face of the indictment, it must be presented as a motion for acquittal at the close of the state's case. Id. at ¶ 10; *State v. Eppinger*, 162 Ohio App.3d 795, 2005-Ohio-4155, 835 N.E.2d 746, at ¶ 36; *State v. Link*, 155 Ohio App.3d 585, 2003-Ohio-6798, 802 N.E.2d 680, at ¶ 12. However, in light of the state's active participation in this procedure, we see no prejudicial error in this regard.

### III. Standard of Review

{¶ 6} Appellate review of a trial court's decision regarding a motion to dismiss involves a mixed question of law and fact. *State v. Staffin*, Ross App. No. 07CA2967, 2008-Ohio-338, 2008 WL 274791, at ¶ 6 (reviewing a dismissal on speedy-trial grounds), citing *State v. Pinson* (Mar. 16, 2001), Scioto App. No. 00CA2913, 2001 WL 301418. We accord due deference to the trial court's findings of fact if supported by competent, credible evidence; however, we independently review whether the trial court properly applied the law to the facts of the case. Id., citing *State v. Thomas*, Adams App. No. 06CA825, 2007-Ohio-5340, 2007 WL 2874962, at ¶ 8. In this case, Certain and the state "entered into a stipulation of facts for the purpose of the hearing. Therefore, our role is limited to conducting a de novo review of the trial court's application of the law to these stipulated facts." *State v. Taylor*, Pickaway App. No. 05CA19, 2005-Ohio-6378, 2005 WL 3220273, at ¶ 10 (dealing with a motion to suppress).

### IV. Obstructing Official Business

{¶ 7} In dismissing the state's complaint, the trial court relied on our decision in *Gillenwater*, 1998 WL 150354. There, police responded to a disorderly-conduct call at Gillenwater's apartment. On arriving at the scene, a police officer observed an individual who was not Gillenwater walking away from the

apartment. When the officer ordered this individual to stop, he ran and escaped from the officer. Looking for this individual, the officer discovered Gillenwater hiding behind a dumpster. The officer ordered Gillenwater to come out from behind the dumpster and to sit on the ground, but Gillenwater refused and remained squatting close to the ground. As the officer attempted to touch him, Gillenwater jumped up and ran. The officer ran after Gillenwater and ordered him to stop, but Gillenwater continued running and eluded the officer. The state charged Gillenwater with obstructing official business.

{¶ 8} We reversed Gillenwater's conviction, holding that the "appellant did not perform an affirmative act that directly interfered with the [officer's] duty." Id. We also noted that other courts had held that "a failure to obey a law enforcement officer's request is not obstruction." Id. We continued: "Furthermore, we do not believe that mere flight from a request for a *Terry* stop constitutes a violation of the obstructing official business statute." Id. We relied on our belief that the legislature did not intend R.C. 2921.31 "to punish individuals who decide not to submit to a *Terry* stop and frisk." Id. In particular, we noted that if the legislature wished to criminalize such conduct, it knew how to so expressly "as it has with other flight situations and failures to comply with an officer's order." Id.

{¶ 9} The state attempts to distinguish *Gillenwater* on its facts. In particular, the state argues that the police in *Gillenwater* had no grounds to make a lawful *Terry* stop of the defendant and that the holding in *Gillenwater* should be the exception, not the rule. Therefore, according to the state, Gillenwater could not have obstructed the officer's "lawful" duties because the stop was not lawful. The state asks us to overrule *Gillenwater* to the extent that we held that "mere flight from a request for a *Terry* stop constitutes a violation of the obstructing official business statute."

{¶ 10} As the Supreme Court of Ohio has explained, "[t]he doctrine of stare decisis is designed to provide continuity and predictability in our legal system. We adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 43. Nonetheless, "an appellate court 'not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors.'" *State v. Burton*, Franklin App. No. 06AP–690, 2007-Ohio-1941, 2007 WL 1196579, at ¶ 22, quoting *Galatis* at ¶ 44. However, "'any departure from the doctrine of stare decisis demands special justification.'" *Galatis* at ¶ 44, quoting *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 120, 752 N.E.2d 962. The Supreme Court defined what constitutes "special justification" in its decision in *Galatis*: "[I]n

Ohio, a prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." Id. at ¶ 48; see also *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, fn. 7 (noting that courts must adhere to prior precedent unless the *Galatis* elements have been satisfied); *Burton* at ¶ 22 (applying the *Galatis* test).

{¶ 11} The first element we consider is whether *Gillenwater* was wrongly decided at that time, e.g., whether we improperly construed R.C. 2921.31 to exclude fleeing after a law-enforcement officer attempts to make an investigative stop. A court interpreting a statute must look to the language of the statute to determine legislative intent. *State v. Osborne,* Jackson App. No. 05 CA2, 2005-Ohio-6610, 2005 WL 3407974, at ¶ 18. Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting or inserting words; that is, we have no authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation. *State v. McDonald,* Ross App. No. 04CA2806, 2005-Ohio-3503, 2005 WL 1595258, at ¶ 11. In interpreting a criminal statute, courts must construe the statute strictly against the state and liberally in favor of the accused. R.C. 2901.04(A); *State v. Gray* (1992), 62 Ohio St.3d 514, 515, 584 N.E.2d 710. "The interpretation of a statute or ordinance is a question of law, which we review de novo." *State v. Frey,* 166 Ohio App.3d 819, 2006-Ohio-2452, 853 N.E.2d 684, at ¶ 9.

{¶ 12} R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Ohio courts have interpreted this statute to criminalize only affirmative acts, not the failure to act. *State v. May,* Highland App. No. 06CA10, 2007-Ohio-1428, 2007 WL 914871, fn. 5 ("An affirmative act is required to prove a R.C. 2921.31 obstruction of official business violation"); *State v. Wellman,* 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 10 ("A violation of this statute requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act"); *State v. Prestel,* Montgomery App. No. 20822, 2005-Ohio-5236, 2005 WL 2403941, at ¶ 16 ("Ohio courts have consistently held that in order to violate the obstructing official business statute, a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information"); *State v. Grooms,* Franklin App. No. 03AP–

1244, 2005-Ohio-706, 2005 WL 407573, at ¶ 18 ("R.C.2921.31(A) requires proof of an affirmative act that hampered or impeded performance of the lawful duties of a public official").

{¶ 13} Thus, when the defendant in *Gillenwater* refused to cooperate with police by remaining in a squatting position rather than sitting down as ordered, he did not violate R.C. 2921.31. However, when the defendant in *Gillenwater* ran from police and continued running after being ordered to stop, we believe he committed an affirmative act that went beyond a refusal to cooperate. Thus, the defendant did more than act suspiciously; he disobeyed an order by police with an overt action. For this reason, we believe that our interpretation of R.C. 2921.31 in *Gillenwater* goes against the plain meaning of the statutory text. The statute prohibits doing "any act" that obstructs official business. That language is broad enough to encompass fleeing from police after being ordered to stop.

{¶ 14} Moreover, we find that our decision in *Gillenwater* is hard to reconcile with our later cases construing R.C. 2921.31. For instance, in *State v. Dunn*, Pickaway App. No. 06CA6, 2006-Ohio-6550, 2006 WL 3575807, at ¶ 47, we held that sufficient evidence supported the defendant's conviction for obstructing official business where he merely placed his knee in a way that prevented officers from closing a police cruiser door. In *State v. Neptune* (Apr. 21, 2000), Athens App. No. 99CA25, 2000 WL 502830, we held that a woman's refusal to put down a knife while pointing it at police and saying "no" constituted a violation of R.C. 2921.31. Also, in *State v. Justice* (Nov. 16, 1999), Pike App. No. 99CA631, 1999 WL 1125113, we explained that although a "[r]efusal to be fingerprinted and * * * answer questions are not acts[,] * * * if a person also takes affirmative actions to hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business." Under this case law, fleeing from police "to hamper or impede the police from finding out his or her identity" would be a violation of R.C. 2921.31. Moreover, the act of fleeing after a request to stop implies knowledge of the officer's authority to detain the individual. Although the detained person need not answer the subsequent questions, an individual is not free to flee the scene when the prerequisites for a *Terry* stop are present.

{¶ 15} Our belief that *Gillenwater* was improperly decided is bolstered by the fact that every Ohio appellate court that has ruled on the question has held that fleeing following an order from a police officer to stop can constitute obstructing official business. *State v. Brickner–Latham*, Seneca App. No. 13–05–26, 2006-Ohio-609, 2006 WL 319183, at ¶ 28 ("Therefore, we find that Brickner–Latham's walking away from Officer O'Connor was an affirmative act that hindered or impeded Officer O'Connor in the performance of his official duties. Further, Brickner–Latham's persistence in disregarding Officer O'Connor's requests to

stop was sufficient evidence for a rational trier of fact to conclude that Brickner–Latham acted with the specific intent to prevent, obstruct, or delay Officer O'Connor's lawful duties"); *State v. Harris*, Franklin App. No. 05AP–27, 2005-Ohio-4553, 2005 WL 2087926, at ¶ 16 (holding that "fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry*, is an affirmative act * * * and a violation of R.C. 2921.31"); *State v. Botos*, Butler App. No. CA2004–06–145, 2005-Ohio-3504, 2005 WL 1606416, at ¶ 16 ("A suspect who flees even after committing a minor nonarrestable offense can be convicted of obstructing official business"); *Dayton v. Turic*, Montgomery App. No. 20149, 2005-Ohio-131, 2005 WL 78498, at ¶ 26 (holding that the defendant's "belligerent conduct, her refusal to give her identification and her refusal to stop walking away from the officer when instructed to stop obstructed the officer's investigation of the altercation"); *State v. Hasley*, Mahoning App. No. 03 MA 215, 2004-Ohio-7065, 2004 WL 2980377, at ¶ 62 ("Hasley took off running after Officer Cox yelled for him to stop. It is clear from the record that Hasley's apparent attempt to elude Officer Cox and Reese delayed the completion of their lawful duties"); *State v. Williams*, Cuyahoga App. No. 83574, 2004-Ohio-4476, 2004 WL 1902368, at ¶ 38 (holding that fleeing from police attempting to make a *Terry* stop obstructs official business); *State v. Lohaus*, Hamilton App. No. C–020444, 2003-Ohio-777, 2003 WL 366755, at ¶ 12 ("[W]e hold that Lohaus's actions in fleeing across several lawns after being told to stop—and in forcing the investigating officer to physically restrain him—fell squarely within [R.C. 2921.31's] proscriptions") (footnote omitted); *State v. Griffin* (May 26, 1999), Summit App. No. 19278, 1999 WL 334781 (holding that the defendant's flight, his throwing a bicycle in front of a police cruiser, and his hiding from police constituted obstructing official business); *State v. Nutter* (Dec. 17, 1998), Licking App. No. 98–CA–0066, 1999 WL 3991 (holding that fleeing a officer after being told to approach and refusing to stop after being ordered to stop constitutes obstructing official business).

{¶ 16} Several of these courts have questioned the soundness of *Gillenwater*. *Harris* at ¶ 15 ("[W]e decline to follow the reasoning of the Fourth District Court of Appeals in *Gillenwater* "); *Lohaus* at ¶ 11 ("We do not find *Gillenwater* to be compelling authority"); *State v. Richards*, Darke App. No. 1557, 2002-Ohio-2162, 2002 WL 857749 ("[W]e have reservations about the soundness of *Gillenwater* * * * "). Furthermore, the only case following our holding in *Gillenwater* that flight alone does not constitute obstructing official business, *State v. Smith* (Mar. 31, 2000), Allen App. No. 1–99–65, 2000 WL 381612, has been overruled by the Third District in *State v. Dice*, Marion App. No. 9–04–41, 2005-Ohio-2505, 2005 WL 1205336, at ¶ 21 and fn. 1, as "improvidently decided."

{¶ 17} Accordingly, we conclude that *Gillenwater* was improperly decided and that the first element of the *Galatis* test has been satisfied.

{¶ 18} The next element of the *Galatis* test is that the prior decision "defies practical workability." We believe this element has also been met. As noted above, our decision in *Gillenwater* conflicts with the plain language of the statute and the case law of other Ohio appellate courts. Furthermore, that decision appears inconsistent with our own case law. Thus, our holding in *Gillenwater* has disrupted the uniformity and predictability of the law. Such a situation defies practical workability.

{¶ 19} The last element of the *Galatis* test is that "abandoning the precedent would not create an undue hardship for those who have relied upon it." We do not believe that individuals or law-enforcement officials will suffer any undue hardship as a result of this judicial "about-face," for " '[i]t does no violence to the legal doctrine of stare decisis to right that which is clearly wrong. It serves no valid public purpose to allow incorrect opinions to remain in the body of our law.' " *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 60, quoting *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 300, 581 N.E.2d 1086.

## V. Conclusion

{¶ 20} Therefore, we overrule *Gillenwater* to the extent that it conflicts with this opinion and hold that flight may, in appropriate circumstances, constitute a violation of R.C. 2921.31.

Judgment reversed
and cause remanded.

McFARLAND, J., concurs.

ABELE, J., dissents.

ABELE, Judge, dissenting.

{¶ 21} I respectfully and reluctantly dissent.

{¶ 22} The principal opinion cites with approval other Ohio court decisions that have concluded that the act of fleeing from a police officer who is lawfully attempting to detain a suspect under the authority of *Terry* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties under R.C. 2921.31. See, e.g., *State v. Harris*, Franklin App. No. 05AP–27, 2005-Ohio-4553, 2005 WL 2087926. I must emphasize that I have no quarrel whatsoever with the concept that flight from a *Terry* investigative detention or seizure should constitute punishable criminal conduct. My difficulty with this issue stems from my belief that such a violation should not simply fall under the R.C.

2921.31 catch-all provision, otherwise known as the obstructing-official-business statute. As I point out infra, I believe that the legislature should, if it so desires, enact legislation to explicitly address this specific conduct.

{¶ 23} In *State v. Gillenwater* (Apr. 2, 1998), Highland App. No. 97CA0935, 1998 WL 150354, we noted that although we have great sympathy with the plight of law-enforcement officers attempting to investigate criminal activity, courts must nevertheless construe and interpret criminal laws strictly against the state and liberally in favor of an accused. See *State v. Hill* (1994), 70 Ohio St.3d 25, 635 N.E.2d 1248; *State v. Hooper* (1979), 57 Ohio St.2d 87, 11 O.O.3d 250, 386 N.E.2d 1348; *State v. Gray* (1992), 62 Ohio St.3d 514, 584 N.E.2d 710; R.C. 2901.04. Also, legislative bodies have the duty to create criminal laws through statutes. Courts have the duty to interpret, and not create, criminal laws. Most importantly, criminal statutes must provide citizens and courts with adequate notice and guidance concerning the particular description and nature of criminal offenses.

{¶ 24} First, it is important to recognize that the Ohio Revised Code includes several other specific statutory provisions related to this area of criminal law. See, e.g., R.C. 2921.22 (prohibiting a person from resisting a lawful arrest); R.C. 2921.331 (prohibiting an individual from failing to comply with an officer's order regarding traffic flow and from failing to stop his vehicle when the officer signals the motorist to stop); and R.C. 2921.34 (no person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break (escape) the detention).[2]

{¶ 25} As we noted in *Gillenwater,* courts should construe statutory provisions together and read the Revised Code "as an interrelated body of law." *State v. Moaning* (1996), 76 Ohio St.3d 126, 128, 666 N.E.2d 1115. Statutes that relate to the same subject matter are in pari materia, and courts should read the statutes together "to ascertain and effectuate the legislative intent." Id. Another factor to consider is the principle of expressio unis est exclusio alterius (*"Expressio unis est exclusio alterius* means [that] 'the expression of one thing is the exclusion of the other.'" *Thomas v. Freeman* (1997), 79 Ohio St.3d 221, 224, 680 N.E.2d 997, quoting Black's Law Dictionary (6th Ed.1990) 581.)

---

**2.** {¶ a} The Legislative Service Commission comment to R.C. 2921.34 provides:

{¶ b} "This section consolidates several sections in former law, and restates the offense of escape so as to include an escape from arrest * * *.

{¶ c} "Under the section, proof of guilt of escape requires a showing that the offender knew he was under detention or perversely disregarded a risk that he was under detention. The purpose of this requirement is to protect those who don't know and have not reasonably been informed that they are under detention, or who reasonably believe that they are the victims of an illegal detention committed for the purpose of harming them in some way."

{¶ 26} In light of the foregoing principles, I believe that if the legislature desires that flight from a *Terry* investigative seizure or detention constitute a violation of a criminal statute, the legislature should enact legislation to that effect, just as it has with other similar crimes and fact situations. See R.C. 2921.22, 2921.34, and 2921.331. Courts should not strain to include such conduct under the very general provision known as the obstruction-of-official-business statute.

{¶ 27} Second, I am concerned about the lack of a precise definition of the "elements" of the crime of flight from a *Terry* investigative detention or seizure. Determining when contact with a law-enforcement officer constitutes a *Terry* investigative seizure or detention, rather than consensual police contact or an arrest, often presents difficult factual and legal issues. Search-and-seizure treatises reveal that courts and commentators have varying thoughts and interpretations concerning precisely when a *Terry* detention or seizure may have occurred and differing views about that detention's scope and duration. In contrast, the elements of the resisting arrest statute, the failure to comply with an officer's order statute, and the escape statute have been clearly identified. Finally, I note that unlike arrest situations, when officers generally explicitly inform suspects that they are under arrest, or at a minimum make some other indication that an arrest has, in fact, occurred, rarely, if ever, does an officer inform a suspect that he or she is under a *Terry* investigative seizure or detention. Instead, defendants and courts will be left to speculate about the exactitudes of such an offense.

{¶ 28} Once again, I have no quarrel with the concept that flight from a *Terry* investigative detention or seizure should constitute punishable criminal conduct. I simply have difficulty about how we get there.