[Cite as *State v. Laporte*, 2015-Ohio-294.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
        Plaintiff-Appellee,             :        Case No.  14CA3450
                                        :
    vs.                                 :
                                        :        DECISION AND JUDGMENT
KANTZ LAPORTE,                          :        ENTRY
                                        :
        Defendant-Appellant.            :        **Released: 01/20/15**
_____

APPEARANCES:

James T. Boulger, Chillicothe, Ohio, for Appellant.

Sherri K. Rutherford, Law Director, City of Chillicothe, and Benjamin A.
Sigall, City of Chillicothe Assistant Law Director, Chillicothe, Ohio, for
Appellee.

_____

McFarland, A.J.

    **{¶1}** This is an appeal from Appellant Kantz LaPorte's sentence and

judgment of the Chillicothe Municipal Court filed May 29, 2014.  Appellant

contends the trial court erred by determining that the State of Ohio had

proved beyond a reasonable doubt each element of the offense of obstruction

of official business, R.C. 2921.31.  Upon review, we find no merit to

Appellant's argument.  Accordingly, we affirm the judgment of the trial

court.

FACTS

{¶2} On May 29, 2014, Appellant was convicted after a bench trial in the Chillicothe Municipal Court of a violation of R.C. 2921.31, obstructing official business.  The charge arose from events which occurred on December 31, 2013, at an address on Plyley's Lane in Ross County, Ohio.

{¶3} At trial, the State first called Officer Jeffrey Dement of the Chillicothe Police Department.  Officer Dement testified on December 31, 2013, at approximately 3:30 a.m., he responded to a possible domestic in progress at the residence.  Dement testified dispatch had received a call reporting a "male subject shouting, trying to get inside the residence." When Dement arrived and went to the back of the apartment, he saw glass splatter on the ground.  Dement testified he saw Appellant standing in the residence and parting the blinds.  Dement identified himself and ordered Appellant to come outside and show his hands.  Appellant replied "O.k. Give me a second."  Appellant, however, began to retreat, walking backwards.  Dement drew his weapon and repeated his order.  Appellant then said "Give me two minutes," and he went upstairs.  Dement testified he believed the situation to be a burglary in progress, with a possible victim of a domestic or a hostage inside.  Dement testified he had a right to stop Appellant, but he did not enter the building because he was alone at that

point, he did not know if Appellant was alone and/or armed, and he could not see everything inside the apartment.

{¶4} Dement testified the other officer arrived and they finally talked Appellant into coming outside. When Appellant came down the steps, they entered the residence, ordered him to the ground, and handcuffed him.

{¶5} Dement testified he asked appellant for his identification because he felt it was pertinent to know if Appellant had a right to be at the residence. Appellant advised his wallet was stolen. After a weapons pat, the officers found the wallet in Appellant's front pants pocket. Dement testified Appellant's failure to respond to the commands when first ordered definitely delayed the investigation.

{¶6} Sergeant Jonathan Robinson of the Chillicothe Police Department also testified about the December 31, 2013 incident on Plyley's Lane. When Robinson first arrived, he observed a front screen pulled out, laying in the brush. Robinson observed a person looking out the front of the apartment. He requested backup from the sheriff's department and state patrol. Robinson testified he went around back and for the next several minutes, both officers yelled at Appellant to exit the apartment. Robinson testified Appellant only peeked out the window and retreated into the

apartment. The officers eventually entered through the broken patio glass and took Appellant into custody.

{¶7} Robinson testified it was an unknown situation because the officers suspected a burglary had occurred, and did not know if Appellant was arming himself or barricading himself. Robinson testified they were also fearful for who might be in the apartment with Appellant. Robinson testified the officers had a legal right to enter because it was a crime scene. Robinson testified the investigation was delayed by 5-7 minutes.

{¶8} Appellant also testified about the incident. On December 31, 2013, he resided in Columbus and his girlfriend lived at the Plyley's Lane address. He was familiar with the apartment because he had stayed overnight there. Appellant and his girlfriend had spent time together on the date in question. Around 8:00 p.m., Appellant went to a local bar. He stayed until closing, when he discovered he could not find his wallet and keys. Appellant eventually found his wallet, but a bartender drove him to the apartment.

{¶9} Appellant testified he started knocking at the door but neither his girlfriend nor anyone else answered. He waited about 10 minutes in the severe cold, walked around the back of the apartment and knocked. Appellant testified he suffers from post-traumatic stress disorder (PTSD) and

was having a panic attack. He further testified his body temperature was dropping and he had to use the bathroom. Appellant grabbed a rock, broke the sliding glass window, and entered the apartment to get warm. He went upstairs to use the bathroom.

{¶10} Appellant testified when he exited the bathroom, he heard unintelligible yelling. He saw spotlights on the window. Appellant testified he was not thinking clearly and stumbling with his words. Appellant testified he was told they were going to send in dogs, so he walked from the back. He testified the officers ordered him to the ground. Appellant testified they asked him why he broke the glass, what his name was, and what he was doing there. He told them his girlfriend lived there and gave them her phone number, and told them about her children. Appellant further testified he did not have his wallet, but they did not give him a chance to explain the situation. The trial court also heard evidence on a CD-ROM which recorded the exchanges amongst Appellant and the officers.

{¶11} The trial court found Appellant guilty and sentenced him to five days of incarceration with credit for time served, and a $250.00 fine. This timely appeal followed. His sentence has been stayed pending appeal.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED IN DETERMINING THAT
THE STATE HAD PROVEN BEYOND A REASONABLE

DOUBT EACH ELEMENT OF THE OFENSE OF
OBSTRUCTION OF OFFICIAL BUSINESS UNDER 2929.31
R.C. WHEN THE EVIDENCE, VIEWED IN THE LIGHT
MOST FAVORABLE TO THE PROSECUTION, WAS, AS A
MATTER OF LAW, INSUFFICIENT TO ESTABLISH THE
NECESSARY ELEMENTS OF AN AFFIRMATIVE OR
OVERT ACT ON THE PART OF THE DEFENDANT
PERFORMED WITH A PURPOSE TO PREVENT,
OBSTRUCT, OR DELAY."

## A. STANDARD OF REVIEW

**{¶12}** When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. See, also, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979).

**{¶13}** This test raises a question of law and does not allow us to weigh the evidence. *State v. Martin,* 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1983). Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to

draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. *State v. Thomas,* 70 Ohio St.2d 230, 227, N.E.2d 212 (1986), paragraph one of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subject to the same standard of proof." *Jenks* at paragraph one of the syllabus.

## B. LEGAL ANALYSIS

{¶14} Appellant argues the language contained in R.C. 2921.31 requires the state to prove as an element of the offense of obstructing official business, an "affirmative or overt act upon the part of the defendant as opposed to a refusal to act." (Appellant's brief at p. 8, quoting *State v. May,* 4th Dist. Highland No.06CA10, 2007-Ohio-1428). Appellant frames the issue as whether his refusal to come out of the house and his movement within the house for a period of approximately five minutes constitutes an affirmative act. Appellant directs us to *State v. Crowell*, 2nd Dist. Montgomery No. 23539, 2010-Ohio-4917.

{¶15} R.C. 2921.31 provides:

"(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official

of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶16} Generally speaking, when law enforcement possesses reasonable grounds to believe that an emergency exists, they have a legal duty to enter premises and to investigate. *State v. May,* 4th Dist. Highland No. 06CA10, 2007-Ohio-1428, ¶ 11. In *State v. Crowell,* 2nd Dist. Montgomery No. 23539, 2010-Ohio-4917, defendant was convicted of obstructing official business but upon appeal, the court held that the evidence did not support the conviction. Law enforcement officers were dispatched to defendant's residence after receiving a 911 call. Upon arrival they found the door of the home open, a woman standing outside, very upset and unable to consent to the officers entering the home. The officers stood 20-25 feet from the open door and repeatedly yelled for the defendant to come outside. He walked past the open door, wrapped in just a sheet or towel, but ignored their request and closed the door.

{¶17} The officers could see defendant walk to the master bedroom so they went to that window and ordered him to climb out the window. At first he refused, but when threatened with tasering, he climbed out, without clothing and smelling strongly of alcohol. Defendant claimed not to have heard the officers requests, he denied closing the door, and claimed he had

been asleep. The officers found an infant inside safe and asleep when they were able to enter the home. Defendant was arrested, charged, and convicted of obstructing official business.

{¶18} On appeal, defendant argued the state failed to present sufficient evidence that defendant performed an affirmative act that actually hampered or impeded public officials in the performance of their duties. The appellate court agreed. The appellate court found that defendant's closing of the front door was in the nature of a continued refusal to cooperate with officers and, even if it was an overt act, the state had not proven the act of closing the front door had the effect of hampering or impeding the investigation of the officers who were standing 20- 25 feet away. The appellate court further found that, if defendant lied to the officers, there was no evidence that his statements were made with the intent to hamper or impede the investigation or that the statements actually had the effect of hampering or impeding the investigation.

{¶19} In response, Appellee contends that *Crowell* is distinguishable in that the court emphasized that the defendant's action did not actually hamper or impede law enforcement. Appellee further points out that the situation here is analogous to a defendant who flees a *Terry* stop, which this court has already established is an affirmative act that can constitute

obstructing official business.  Appellee directs us to *State v. Certain,* 180 Ohio App.3d 457, 2009-Ohio-148.  Appellee frames the issue as whether the defendant had the right to refuse contact with law enforcement at the time he fled.  Appellee argues when the defendant does not have the right to refuse contact, such as during a *Terry* stop, or when, as here, the situation requires law enforcement to make entry into a home in order to investigate an "apparent active serious felony with possible victims inside," then fleeing such contact can constitute obstructing official business. (Appellee's brief at p. 7).

{¶20} Whenever a police officer accosts an individual and restricts his freedom of movement, that individual's Fourth Amendment rights are implicated.  *State v. Brickner-Latham,* 3rd Dist. Senenca No. 13-05-26, 2006-Ohio-609, ¶ 18.  *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968).  In order for a police officer to temporarily detain someone for investigative purposes, absent the presence of probable cause, the police officer must have a reasonable articulable suspicion that illegal activity is afoot.  *Brickner-Latham, supra; State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489, citing *Terry*, 392 U.S. at 21.  Reasonable articulable suspicion necessary to effectuate an investigative stop has been defined as "specific and articulable facts which, taken together with rational inferences from those facts,

reasonably warrant that intrusion * * * ." *Brickner- Latham, supra,* quoting *Terry,* 392 U.S. at 21.

{¶21} In *State v. Certain,* 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259 (4th Dist.), the state charged defendant with obstructing official business after he fled from a sheriff's deputy who was attempting to make an investigative stop. Defendant moved to dismiss the complaint relying on the court's holding in *State v. Gillenwater*, that "mere flight from a request for a *Terry* stop" does not constitute a violation of R.C. 2921.31. Concluding that *Gillenwater* controlled the case, the trial court dismissed the complaint against *Certain.* On appeal, this court reviewed the *Gillenwater* decision.[1]

{¶22} There, police responded to a disorderly-conduct call at Gillenwater's apartment. Looking for another individual at the scene, an officer discovered Gillenwater hiding behind a dumpster. The officer ordered Gillenwater to come out from behind the dumpster but he refused. As the officer attempted to move Gillenwater, he jumped up and ran. The officer ran after him, ordering Gillenwater to stop, but he continued running and eluded the officer. The state charged Gillenwater with obstructing official business. The court of appeals reversed Gillenwater's conviction on the charge, holding that the "appellant did not perform an affirmative act that

---

[1] This court overruled *Gillenwater* to the extent that it conflicted with *Certain* and held that flight may, in appropriate circumstances, constitute a violation of R.C. 2921.31.

directly interfered with the [officer's] duty.  See, *Certain,* at ¶ 8.  In

*Gillenwater,* we observed that when Gillenwater refused to cooperate by

remaining in a seated position, he did not violate R.C. 2921.31, but when he

ran and continued running after being ordered to stop, he committed an

affirmative act beyond the refusal to cooperate.

{¶23} In *Gillenwater,* and *Certain,* we cited *State v. Brickner-Latham*,

3rd Dist, Seneca No. 13-05-25, 2006-Ohio-609.  In *Brickner-Latham,* the

citing officer testified while on regular patrol, he observed three subjects

crossing the street when he heard one of the three yelling very loudly, which

was unusual for the time of night.  As the officer proceeded on the street, he

noted the subjects crossed into a city lot and as he passed the lot, someone in

the group yelled "police."  The officer then backed up and turned into the lot

to investigate the situation and tell the subjects to quiet down.  When he

entered the lot, two of the subjects stopped, while Brickner-Latham kept

walking through the lot.  He instructed Brickner-Latham multiple times to

stop but he kept ignoring him and walking away.  He further testified he

requested Brickner-Latham to stop because he believed Brickner-Latham

was the person yelling and he did not know if he was trying to avoid him

because of a warrant or another issue.  He eventually detained Brickner-

Latham by his shirt, asked him his name several times without a response, and finally placed him under arrest.

{¶24} On appeal, the appellate court found that based upon the testimony at the suppression hearing, Brickner-Latham's conduct gave rise to enough of a reasonable articulable suspicion that illegal activity was afoot to permit the officer to conduct an investigative stop of Brickner-Latham. The appellate court further found that:

> "Brickner-Latham's walking away from [the officer] was an affirmative act that hindered or impeded [the officer] in the performance of his official duties. Further, Brickner-Latham's persistence in disregarding Officer O'Connor's requests to stop was sufficient evidence for a rational trier of fact to conclude that Brickner-Latham acted with the specific intent to prevent, obstruct, or delay [the officer's] lawful duties." *Id.* at ¶ 28.

{¶25} In rendering its decision herein, the trial court stated that *Crowell* can be distinguished from the facts in Appellant's case. We agree. The trial court noted in *Crowell,* the defendant on the officer's arrival was present and outside of the residence and the victim was no longer in harm's way. It was the defendant's residence to which the officers had responded. That is not the case here.

{¶26} Here the Chillicothe police officers were dispatched to a possible domestic call with broken glass indicating forced entry. Officers Dement and Robinson had no way of knowing whether or not Appellant was

armed and whether or not there was another person, a victim, inside the home. The officers believed a burglary was in progress. It was the officers' duty to investigate a possible crime scene. The trial court found Appellant's failure to obey their orders to step outside and raise his hands impeded the officers' ability to investigate the scene. Although the officers testified to a 5-7 minute delay in their investigation, a victim or an officer could have been critically injured or killed in even a brief time period.

{¶27} Furthermore, the trial court noted the audio portion of the CD-ROM presented in evidence demonstrated that Officer Dement clearly advised Appellant to come out with his hands up, which was inconsistent with Appellant's testimony. The transcript reveals when Officer Dement first arrived, Appellant was standing in the apartment and it appeared to Dement that Appellant was getting ready to exit because he parted the blinds. Dement identified himself and ordered Appellant to come out, but Appellant retreated. By contrast, Appellant testified he had been in the house, upstairs, about 15 minutes when he exited the bathroom and heard yelling. The trial court found Officer Dement's testimony to be more credible. We are mindful that the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.

*State v. Crawford,* 2nd Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 13;

*State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶28} We find after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of obstructing official business proven beyond a reasonable doubt. We find Appellant's act of retreating from the officers to be an overt act which delayed them from performing official duties and hampered their investigation of a possible crime scene. As such, we overrule Appellant's assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland,
Administrative Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**